**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | Bankruptcy No. 05 B 43387 |
| | ) | Chapter 13 |
| ROBERT MCCOY, | ) | Judge John H. Squires |
| | ) | |
| Debtor. | ) | |

# MEMORANDUM OPINION

This matter comes before the Court on the objection of Robert McCoy (the "Debtor") to Claim Nos. 8 and 9 filed by Mutual Bank and Claim No. 10 filed by Mary E. Dik. For the reasons set forth herein, the Court overrules and denies, in part, the Debtor's objection to these claims. Claim Nos. 8 and 9 of Mutual Bank are duplicate claims, and thus, Claim No. 9 is hereby disallowed. Claim No. 8 is allowed. Claim No. 10 filed by Mary E. Dik is allowed.

## I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to decide this matter pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. It is a core proceeding under 28 U.S.C. § 157(b)(2)(B).

## II. FACTS AND BACKGROUND

On October 4, 2005, the Debtor filed a Chapter 13 bankruptcy petition. The Debtor's plan was confirmed on December 21, 2005. The plan provides for a ten percent distribution to general unsecured creditors.

On January 30, 2006, Mutual Bank filed two proofs of claim, each in the amount of $111,701.11, which were designated Claim Nos. 8 and 9.[1] On May 1, 2006, Mary E. Dik filed a proof of claim in the amount of $111,701.11, which was designated Claim No. 10. Mary E. Dik's claim was filed after the claims bar date.[2]

The circumstances underlying the proofs of claim are as follows. In May 2001, Mary E. Dik, a notary public and an employee of Mutual Bank, notarized the purported signatures of the Debtor and his then wife, Bonnie McCoy, on a mortgage on their home to secure a business loan to the Debtor from Security Bank of DuPage, now known as Mutual Bank. The Debtor admitted in a deposition in a state court action that he forged Bonnie McCoy's signature on the loan documents. Upon learning of the forgery, in 2004, Bonnie McCoy filed a marital dissolution proceeding and also filed a lawsuit in the state court against Mutual Bank and Mary E. Dik alleging that her signature on the mortgage was forged by the Debtor and improperly notarized by Mary E. Dik. (Resp. Ex. No. 1-C.) Bonnie McCoy did not name the Debtor in that lawsuit. Mutual Bank filed a third-party complaint against the Debtor and asserted fraud, negligence, breach of contract, breach of warranty, indemnification, and contribution. (Resp. Ex. No. 1.) On April 5, 2005, an order of default was entered against the Debtor in the state court action. (Resp. Ex. No. 2.) The state court action was stayed by the automatic stay in this bankruptcy case. On July 27, 2006, Mutual Bank and Mary E. Dik moved for relief from the stay to pursue discovery

[1] Mutual Bank concedes that Claim Nos. 8 and 9 are duplicate claims. Thus, Claim No. 9 is hereby disallowed.

[2] The Debtor asserts that this claim was allowed to be filed late. This assertion is not correct. On June 14, 2006, the Court denied Mary E. Dik's motion to deem her claim timely filed. Nevertheless, the Debtor does not object to Mary E. Dik's claim on the basis of timeliness.

from the Debtor in the state court proceedings relative to the claims asserted against them there. That motion was granted by this Court on August 9, 2006.

## III. APPLICABLE STANDARDS

Pursuant to Federal Rule of Bankruptcy Procedure 3001(f), "[a] proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim." FED. R. BANKR. P. 3001(f); *see also* 11 U.S.C. §§ 501 and 502(a). Claim objectors carry the initial burden to produce some evidence to overcome this rebuttable presumption. *In re O'Malley*, 252 B.R. 451, 455-56 (Bankr. N.D. Ill. 1999). "Once the objector has produced some basis for calling into question allowability of a claim, the burden then shifts back to the claimant to produce evidence to meet the objection and establish that the claim in fact is allowable." *Id.* at 456. However, the ultimate burden of persuasion always remains with the claimant to prove entitlement to the claim. *In re Nejedlo*, 324 B.R. 697, 699 (Bankr. E.D. Wis. 2005); *In re Octagon Roofing*, 156 B.R. 214, 218 (Bankr. N.D. Ill. 1993). The properly filed claims of Mutual Bank and Mary E. Dik constitute prima facie evidence of the validity and amount of those claims. The Debtor, as objector, has the burden of presenting evidence to rebut the claims' prima facie validity. If that burden is satisfied, then Mutual Bank and Mary E. Dik bear the ultimate burden of proving their claims. The parties waived their opportunity for an evidentiary hearing and chose to rest on their filed papers.

## IV. DISCUSSION

The Debtor contends that the claims of Mutual Bank and Mary E. Dik are for reimbursement or contribution of an entity that is liable with the Debtor pursuant to 11 U.S.C. § 502(e)(1). Specifically, the Debtor maintains the claims are based on liability that may exist to Bonnie McCoy based on her allegation that the Debtor forged her signature on the loan documents. Further, the Debtor argues that the claim of Bonnie McCoy is deemed disallowed because she was properly scheduled and did not timely file a claim, and therefore, her claim is disallowed as defined in § 502(e)(1)(A). The Debtor contends that the claims are contingent as defined in § 502(e)(1)(B). According to the Debtor, the claims of Mutual Bank and Mary E. Dik should be subrogated to the claim of Bonnie McCoy pursuant to 11 U.S.C. § 509. Alternatively, the Debtor states that the claim of Mary E. Dik is not a claim on which the Debtor is liable because Bonnie McCoy's claim against Mary E. Dik is based on a different theory–allegation of false notarization of documents.

Mutual Bank and Mary E. Dik argue that the Debtor's reference to §§ 502(e) and 509 is not germane to the claims at issue. According to Mutual Bank and Mary E. Dik, the Debtor's repeated contentions that the claims at bar are for reimbursement and contribution are incorrect. Rather, the claimants argue that Bonnie McCoy's complaint against them and Mutual Bank's complaint against the Debtor show that Mutual Bank and Mary E. Dik are pursuing claims that are direct in nature, e.g., fraud, negligence, breach of contract, and breach of warranty.

The Debtor objects to the claims of Mutual Bank and Mary E. Dik under 11 U.S.C. § 502(e)(1) which provides as follows:

> (e)(1) Notwithstanding subsections (a), (b) and (c) of this section and paragraph (2) of this subsection, the court shall disallow any claim for reimbursement or contribution of an entity that is liable with the debtor on or has secured the claim of a creditor, to the extent that–
>
> (A) such creditor's claim against the estate is disallowed;
>
> (B) such claim for reimbursement or contribution is contingent as of the time of allowance or disallowance of such claim for reimbursement or contribution; or
>
> (C) such entity asserts a right of subrogation to the rights of such creditor under section 509 of this title.

11 U.S.C. § 502(e)(1).

First, the Debtor argues that the claim of Bonnie McCoy is deemed disallowed because she was properly scheduled as a creditor and did not timely file a claim. Therefore, according to the Debtor, her claim is disallowed as defined in § 502(e)(1)(A). The Debtor maintains that the alleged disallowance of Bonnie McCoy's claim is sufficient to bar the claims of Mutual Bank and Mary E. Dik. The Court rejects this contention. A claim must be filed before it can be allowed or disallowed. The failure of a scheduled creditor to file a claim by the deadline date does not mean that the unfiled claim is disallowed. Indeed, Bonnie McCoy never filed a claim in this bankruptcy case. Therefore, she did not have a claim that could be either allowed or disallowed. Thus, the Debtor's argument that Bonnie McCoy's unfiled claim has been disallowed under § 502(e)(1)(A) fails. Accordingly, the Debtor has not established that Claim No. 8 of Mutual Bank and Claim No. 10 of Mary E. Dik should be disallowed under § 502(e)(1)(A).

Next, in order to disallow a claim for reimbursement of or contribution to an entity that is co-liable with the debtor under § 502(e)(1)(B), three factors must be established: (1) the claim

must be one for reimbursement or contribution; (2) the party asserting entitlement to reimbursement or contribution must be liable with the debtor on the underlying claim; and (3) the claim must be contingent at the time of its allowance or disallowance. *Norpak Corp. v. Eagle-Picher Indus., Inc.*, 131 F.3d 1185, 1187 (6th Cir. 1997); *In re GCO Servs., LLC*, 324 B.R. 459, 465 (Bankr. S.D.N.Y. 2005); *In re Farley, Inc.*, 225 B.R. 407, 411 (Bankr. N.D. Ill. 1998); *In re Drexel Burnham Lambert Group, Inc.*, 146 B.R. 98, 100-01 (Bankr. S.D.N.Y. 1992); *In re A & H, Inc.*, 122 B.R. 84, 85 (Bankr. W.D. Wis. 1990); *In re Provincetown-Boston Airlines, Inc.*, 72 B.R. 307, 309 (Bankr. M.D. Fla. 1987).

Mutual Bank and Mary E. Dik rely on the legislative history of § 502(e)(1) and contend that their claims are not of the kind subject to disallowance under this section. The legislative history of § 502(e)(1) speaks to the claims of "codebtor, surety or guarantor" and states as follows:

> [Section 502(c)], also derived from present law, requires disallowance of the claim for reimbursement or contribution of a codebtor, surety or guarantor of an obligation of the debtor, unless the claim of the creditor on such obligation has been paid in full. The provision prevents competition between a creditor and his guarantor for the limited proceeds in the estate.

S. REP. NO. 95-989, at 65 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5851, 6310; H.R. REP. NO. 95-595, at 354 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5851, 6310. One court noted that "[s]ection 502(e)(1)(B) is also designed to prevent double payment by an estate for the same underlying liability. 'The section is not intended to immunize debtors from contingent liability,' but instead protects debtors from multiple liability on contingent debts." *Farley*, 225 B.R. at 411 (*quoting Eagle-Picher*, 131 F.3d at 1187).

In addition to codebtor situations created by contract, § 502(e)(1)(B) applies to disallow contingent reimbursement or contribution claims created by statute. *See, e.g., Syntex Corp. v. The Charter Co. (In re The Charter Co.)*, 862 F.2d 1500, 1503 (11th Cir. 1989) (finding that a claim for contribution arising under CERCLA may be a contingent claim subject to disallowance under § 502(e)(1)(B)); *Windolph Trust v. Leitch, (In re Kent Holand Die Casting & Plating, Inc.)*, 125 B.R. 493, 501 (Bankr. W.D. Mich. 1991) (same). In interpreting the purpose of §502(e)(1)(B), the First Circuit Court of Appeals noted as follows:

> Although section 502(e)(1)(B) may have been devised *primarily* with contract-based codebtor relationships in mind (*e.g.*, guaranties, suretyships), however, its language ("liable with") has been found too plain and inclusive to exempt "joint and several" tort-based obligations from disallowance, and the Bankruptcy Code elsewhere carves out no exception for this variety of co-obligation.

*Juniper Dev. Group v. Kahn (In re Hemingway Transp., Inc.)*, 993 F.2d 915, 924 (1st Cir. 1993) (citations omitted). It has been held that a claim for contribution among joint tortfeasors satisfies the requirement that the claim be for contribution and that the claimant be coliable with the debtor on the underlying claim. *Drexel Burnham Lambert Group*, 146 B.R. at 101.

The Court finds that the Debtor has not established that Claim No. 8 of Mutual Bank and Claim No. 10 of Mary E. Dik should be disallowed pursuant to § 502(e)(1)(B). First, the claims must be for reimbursement or contribution. "A claim for indemnification, as well as contribution, has been considered to be for 'reimbursement' within § 502(e)(1)(B)." *In re Pettibone Corp.*, 110 B.R. 837, 848 (Bankr. N.D. Ill. 1990). The Debtor has not shown that all of their claims are for reimbursement or contribution. Only Counts V and VI of Mutual Bank's third-party complaint are for indemnification and contribution. Indeed, Mutual Bank and Mary E. Dik contend and

have shown that their claims are direct in nature, e.g., fraud, negligence, and breach of contract and warranty. Counts I, II, III, and IV of Mutual Bank's state court action are directly against the Debtor, and do not merely seek reimbursement or contribution. Thus, the Debtor's characterization of the subject claims of Mutual Bank and Mary E. Dik as only for reimbursement or contribution is incorrect.

Next, the Debtor has not established the second element necessary to disallow a claim under § 502(e)(1)(B). The Debtor must show that the party asserting entitlement to reimbursement or contribution must be "liable with" the Debtor on the underlying claim. The phrase "liable with the debtor" has been interpreted to be broad enough to encompass any type of liability shared with a debtor. *A & H*, 122 B.R. at 86 (*citing In re Baldwin-United Corp.*, 55 B.R. 885 (Bankr. S.D. Ohio 1985)). According to the Debtor, if it is determined that he forged Bonnie McCoy's signature (and apparently the Debtor admitted such), he is liable to Bonnie McCoy, and Mutual Bank is also liable to Bonnie McCoy. Therefore, Mutual Bank has a right to recover from its joint tortfeasor, the Debtor.

The Court finds that there was no evidence proffered with the objection to the claims to show that either Mutual Bank or Mary E. Dik acted in concert with the Debtor or agreed to his now admitted forgery of Bonnie McCoy's signature on the mortgage. Thus, the Court cannot find on this limited record that either claimant was a joint tortfeasor with the Debtor. Their separate liability arises from Mary E. Dik's improper and negligent acts as a notary vis-á-vis Bonnie's McCoy's signature and Mutual Bank's alleged liability as a principal for its agent's improper acts as a notary with respect to the forged signature. Thus, the Debtor has not shown that he is liable with the claimants.

Finally, the Debtor has not shown that the claims are contingent at the time of their allowance or disallowance. The Seventh Circuit Court of Appeals has stated that "the concept of contingency involves the nature or origin of liability. More precisely, it relates to the time or circumstances under which the liability arises." *In re Knight*, 55 F.3d 231, 236 (7th Cir. 1995). The *Knight* court agreed with the bankruptcy court's determination that a debt for purposes of 11 U.S.C. § 109(e) eligibility is noncontingent "as long as all the events that gave rise to the debtor's liability had occurred prior to the filing of the bankruptcy petition." *Id.* The Court finds that the *Knight* court's determination of whether a debt is contingent for purposes of § 109(e) applies equally to whether a claim is contingent for purposes of § 502(e)(1)(B). A contingent claim has been defined as a "claim which has not yet accrued and which is dependent upon some future event that may never happen." *Lousberg, Kopp, Kutsunis & Weng, P.C. v. Bonnett (In re Bonnett)*, 158 B.R. 125, 127 (Bankr. C.D. Ill. 1993); *see also In re McGovern*, 122 B.R. 712, 715 (Bankr. N.D. Ind. 1989). The analysis of what constitutes a contingent claim varies depending on the posture of the case. *In re Chi., Milwaukee, St. Paul & Pac. R.R. Co.*, 974 F.2d 775, 781 (7th Cir. 1992).

The Court finds that the claims of Mutual Bank and Mary E. Dik are not contingent. All events that gave rise to their claims arose pre-petition. Hence, as long as all of the events that gave rise to the Debtor's liability occurred prior to the filing of the bankruptcy case, the claims of Mutual Bank and Mary E. Dik are noncontingent. *See Knight*, 55 F.3d at 236. That the state court has not yet adjudicated the amount of the Debtor's liability in the state court action is of no moment here. "'[T]he existence of a dispute over either the underlying liability or the amount of a debt does not automatically render the debt . . . contingent. . . .'" *Id.* at 235 (*quoting In re*

*Jordan*, 166 B.R. 201, 202 (Bankr. D. Me. 1994)). Thus, both Mutual Bank and Mary E. Dik have claims that are not contingent. If the state court later adjudicates their claims in a different amount against the Debtor, he can then move for reconsideration of those claims for cause under 11 U.S.C. § 502(j).

Finally, the Court finds that the Debtor has not shown that the claims should be disallowed pursuant to § 502(e)(1)(C). The claims of Mutual Bank and Mary E. Dik are independent of Bonnie McCoy's claims against the Debtor and are not subject to subrogation. There is no showing that either claimant has paid Bonnie McCoy anything on her claims against them and taken by way of subrogation her claims against the Debtor for his forgery of her signature.

## V. CONCLUSION

For the foregoing reasons, the Court overrules and denies, in part, the Debtor's objection to the claims filed by Mutual Bank and Mary E. Dik. Claim Nos. 8 and 9 of Mutual Bank are duplicate claims, and thus, Claim No. 9 is hereby disallowed. Claim No. 8 is allowed. Claim No. 10 filed by Mary E. Dik is allowed.

This Opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate order shall be entered pursuant to Federal Rule of Bankruptcy Procedure 9021.

**ENTERED:**

**DATE:** 11/16/06

John H. Squires
**United States Bankruptcy Judge**

cc: See attached Service List

**SERVICE LIST**

**Robert McCoy**
**Bankruptcy No. 05 B 43387**

David P. Lloyd, Esq.
Grochocinski, Grochocinski & Lloyd, Ltd.
1900 Ravinia Place
Orland Park, IL 60462

Philip D. DeMaertelaere, Esq.
Regas, Frezados & Dallas LLP
111 W. Washington
Suite 1525
Chicago, IL 60602

Marilyn O. Marshall, Chapter 13 Trustee
224 S. Michigan Avenue
Suite 800
Chicago, IL 60603